IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JERMAINE RIVERA,

                                                     Case No.

                  Plaintiff,

                                        **COMPLAINT**

      -against-

POLICE OFFICER TAHA JAHMI (Shield No. 31808),
in his individual and official capacities,

     -and-

SERGEANT IMAD BEYDOUN (Shield No. 03953),
in his individual and official capacities,

     -and-

JOHN DOE OFFICERS #1-#5

     -and-

THE CITY OF NEW YORK

                          Defendants.
----------------------------------------------------------------------X

      Plaintiff, JERMAINE RIVERA by and through his attorneys, SPODEK LAW GROUP,

P.C., as for his complaint against Defendants, alleges the following upon information and belief:

**PRELIMINARY STATEMENT**

      1.     Plaintiff brings this civil rights action as a result of his constitutional rights that

were violated by the defendants. The defendants *inter alia,* falsely arrested Plaintiff and submitted

false allegations to the Kings County District Attorney's Office leading to baseless charges being

brought against him, in addition to using excessive force to stop and arrest Plaintiff, failure to

intervene on his behalf, and various common law claims.

2.      Plaintiff seeks to vindicate his constitutional rights by holding all defendants accountable for their unconstitutional actions. He also seeks, *inter ailia*, compensatory damages for his physical and mental injuries, and for his loss of freedom, as well as punitive damages for Defendants egregious misconduct.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. §1983 for violations of Plaintiff's civil rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

4.      The amount of damages sought exceeds the jurisdiction of all lower courts who would otherwise have jurisdiction.

5.      Venue is proper in the Eastern District of New York. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Plaintiff alleges violation of its rights under the Constitution and laws of the United States, with proper venue pursuant to 28 U.S.C. § 1391 as the events giving rise to the claims occurred within the Eastern District of New York.

6.      Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. 1367 and 1343.

## JURY DEMAND

7.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

## THE PARTIES

8.      Plaintiff JERMAINE RIVERA is a citizen of the United States and of the State of New York. At all times relevant, Plaintiff has resided in the State of New York.

9.      At all times relevant, Defendant TAHA A. JAHMI ("Defendant Jahmi") is a natural born person residing in the State of New York, and is a police officer in the New York Police Department.

10.     At all times relevant, Defendant IMAD BEYDOUN ("Defendant Beydoun") was and is a natural born person residing in the State of New York, and is a Sargent in the New York Police Department.

11.     At all times relevant, Defendant CITY OF NEW YORK ("Defendant City") was and is a municipal corporation, duly organized pursuant to the laws of the State of New York. It is authorized by law to maintain a municipal police force, the New York Police Department ("NYPD"). The NYPD as such, is authorized to perform all functions of a municipal law enforcement department, acting under the direction and supervision of Defendant City.

12.     At all times hereinafter mentioned, and upon information and belief, the individual defendants are named herein both personally and in their official representative capacities as police officers employed by the defendant, THE CITY OF NEW YORK. And that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes and laws of the State of New York, and under and by virtue of their authority as police officers and employees of defendant, THE CITY OF NEW YORK. Each and all of the acts of the defendants alleged herein were done by said defendants while acting as employees of defendant CITY OF NEW YORK.

13.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant CITY OF NEW YORK.

14.     By their conduct, acts, omissions complained herein, Defendants violated clearly established constitutional standards under the Fourth, Fifth, and Fourteenth Amendments to the

United States Constitution, and various state laws as well.

15.     Defendants JOHN DOE OFFICERS #1-#5 were officers employed by Defendant City by and through the New York Police Department, and were stationed/assigned to the 68th Precinct, in Brooklyn, NY.

## NOTICE OF CLAIM

16.     Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the underlying claim as against Defendants.

17.     Plaintiffs have complied with all of the conditions precedent of the bringing of this action, and have complied with all provisions of the Charter of the City of New York, and the plaintiffs have, prior to the bringing of this action and within one year and ninety days after the injuries hereinafter described were received, duly served notice upon the Corporation Counsel and the Comptroller for the City of New York of their intention to sue upon the claim set forth. More than thirty days have elapsed since the presentation of the Notice of Claim, and that said claim remains unadjusted and said Comptroller has failed and/or refused to make any adjustment thereof. The Comptroller has assigned claim numbers #2022PD001727 and #2022PI007791 to said notices of claim.

## STATEMENT OF FACTS

18.     On or about February 12, 2021 at approximately 10:15 pm, Plaintiff was driving a white BMW X5 (NY Plate # KJH2035) (hereinafter, the "Vehicle"), in Kings County, NY on or near the intersection of 78th Street and 12th Avenue. Plaintiff was in his vehicle while awaiting a female companion, when suddenly, Defendant Jahmi and Defendant John Doe Officer #1 ("JD #1") approached Plaintiff while in the Vehicle from the passenger side of the Vehicle.

19.     Upon being approached by Defendants Jahmi and JD #1, Defendant JD #1 proceeded to demand Plaintiff's license and registration information. Defendant JD #1 had his gun in hand as he approached Plaintiff's Vehicle.

20.     As Plaintiff was attempting to comply with Defendant JD #1's request, and without provocation, Defendant JD #1 stated, in sum and substance, "Don't fucking move. Move and you die."

21.     Defendant JD #1 continued to make baseless, intimidating comments, threatening the personal safety of Plaintiff for no legitimate reason. Plaintiff had not made any sudden moves, and Plaintiff verbally stated he would comply with Defendant JD #1's request for his license and registration. Defendant JD #1 further continued to point his gun at Plaintiff while Plaintiff was still in the Vehicle, despite the fact that Plaintiff had not made any sudden moves to cause alarm, and was fully compliant with the defendants' instructions.

22.     February 2021 was also during a heightened period of COVID cases in New York City, and given that Defendant JD #1 was physically less than the six feet from Plaintiff, Plaintiff informed Defendant JD #1 that he was going to put his mask on for his own personal safety.

23.     While Plaintiff was putting on his mask, Defendant JD #1 continued to point his gun at Plaintiff while verbally threatening Plaintiff, by stating in sum and substance, "I'll shoot you."

24.     After Plaintiff put on his mask, Defendants JD #1 and Jahmi ordered Plaintiff to step out of the Vehicle. After Plaintiff fully complied with Defendant Jahmi's order, Defendant JD #1 continued to verbally threaten Plaintiff, again stating in sum and substance, "I'm going to fucking kill you; I am going to shoot you."

25.     Upon hearing Defendant JD #1's repeated threats, Plaintiff became extremely fearful for his own personal safety, and decide to run away from Defendant JD #1 and Jahmi so that Defendant JD #1 could not carry out his threats against Plaintiff.

26.     Defendant JD #1 and Jahmi eventually caught up with and physically secured Plaintiff.

27.     Plaintiff was then taken back besides the Vehicle and was then searched by Defendant Jahmi and JD #1 Defendant Jahmi and JD #1 performed a search of Plaintiff's person and did not find any unlawful substances on Plaintiff's person or in his possession.

28.     Upon finding nothing on Plaintiff's person, JD #1 informed Plaintiff that he and Defendant Jahmi would transport Plaintiff to the 68th Precinct, where he would be more thoroughly searched, and if nothing was found, Plaintiff would be free to go while being issued a summons to appear.

29.     Accordingly, Plaintiff fully complied with Defendant Jahmi and JD #1, and got into their patrol car, and was then transported to the 68th Precinct.

30.     Upon arriving at the 68th Precinct, at approximately 11pm on February 12, 2021, Plaintiff was searched again by officers of the 68th Precinct, however no substances were found on Plaintiff's person.

31.     After being searched at the 68th Precinct, Plaintiff was placed in a holding cell and told to wait until he was called.

32.     After sitting in the holding cell for approximately thirty minutes, Plaintiff was instructed by Defendant Jahmi to get up and come with him to another room within the 68th Precinct. Accordingly, Defendant Jahmi brought Plaintiff to a room within the 68th Precinct where Defendant Beydoun was waiting, along with Defendant John Doe Officers #2-#5;

Defendant Jahmi remained in the room with Plaintiff and John Doe Officer's #2, #3, #4, and #5. Defendants kept Plaintiff in said room for approximately 20 minutes.

33.     Upon sitting Plaintiff down in the room, Defendant Beydoun stated, in sum and substance, "We know who you are, and you know why you're here. Give us all your money and we will let you go, nothing more will happen."

34.     Plaintiff responded to Defendant Beydoun that he had no idea what he was referring to, and had no money of any kind to give him.

35.     Despite Plaintiff stating that he did not know what Defendan Beydoun was referring to, Defendant Beydoun again demanded a bribe from Plaintiff, demanding the money and in return, again offering to free Plaintiff without further inquiry or charges being brought against him.

36.     Again, Plaintiff refused to provide a bribe to Defendant Beydoun. Plaintiff further reiterated that he had done nothing wrong, as the previous searches had failed to yield any unlawful substances of any kind on Plaintiff's person.

37.     After Plaintiff again refused to acquiesce to Defendant Beydoun's demand for a bribe, Defendant Beydoun stated, in sum and substance, "Oh, you want to play hard? You want to be a tough guy? If you don't give me the money, I'll throw extra charges at you, destroy your car, and tie things up in court while you sit in jail."

38.     Despite the fact that Defendant Beydoun was nor present at the scene of Plaintiff's arrest, in addition to the fact that searches at the scene of the incident, on or about the intersection of 78th Street and 12th Avenue, Brooklyn and searches of Plaintiff at the 68th Precinct failed to reveal that Plaintiff was in possession of methamphetamine, crack, or heroin, Defendant Beydoun threatened Plaintiff with baseless charges, destruction of property, and to do whatever he could to ensure Plaintiff spent as much time in custody as possible.

39.     Again, even though Defendants found no meth, crack or heroin on Plaintiff's person, and despite not being present for Plaintiff's interactions with officers at the scene of the incident, Defendant Beydoun knowingly and purposefully proceeded to allege that Plaintiff was found to be in possession, *inter alia*, of meth, crack and heroin.

40.     Defendant Beydoun and Defendant Jahmi then proceeded to charge Plaintiff with, *inter alia*, possession of crack, meth, and heroin, and forwarded said complaint to the Kings County District Attorney's Office, knowing that their forwarding of this patently false information would lead to Plaintiff's prosecution for said charges.

41.     Sadly, Defendant Jehami's sworn statement, containing and using sworn statements by Defendant Beydoun, effectuated the very thing they desired to from the very first moment of their interaction with Plaintiff: to cause Plaintiff harm, severely damage the Vehicle, drag the court process our as long as possible, and force him to answer baseless charges against him brought by the Kings County District Attorney's Office, charges brought by said office based upon the sworn statements of said defendants in Plaintiff's criminal court information.

42.     Plaintiff was forced to attend court approximately six between February 12, 2021 and December 21, 2021, and ultimately, all charges arising out of Plaintiff's arrest of February 12, 2021 were dismissed by the Kings County District Attorney's Office.

43.     Even after Plaintiff refused to bribe Defendant Beydoun, Defendant Beydoun would not be deterred, and was determined to make good on his threats to Plaintiff. Accordingly, Defendant Beydoun and Defendant Jahmi directed that Plaintiff's Vehicle be seized and searched as evidence in the fabricated charges as filed by Defendants Jahmi and Beydoun.

44.     Still wanting to "find the money" Defendants Jahmi and Beydoun directed that Plaintiff's Vehicle be searched, without regard for the value or wellbeing of the Vehicle.

45.     As such, in their quest to "find the money" and in addition to Defendant Beydoun's desire to find unlawful substances which would corroborate his sworn statements which added additional, baseless charges against Plaintiff, Defendants literally and physically tore apart Plaintiff's Vehicle. To wit, Defendants caused extensive damage to the Vehicle's electrical system, steering column, steering wheel, cowl, instrument panel/information dashboard/console, the front passenger and driver seats, roof, and front door trim. In total, Defendants caused approximately no less than $17,487.13 in damages to the Vehicle. The damage caused, *supra*, was wholly unnecessary and grossly excessive, as Plaintiff had repeatedly stated that he did not have any money or bribe for Defendants Jehami and Beydoun, and no heroin, meth, or crack was found on Plaintiff during any of the searches perfor6med on him.

46.     Defendants' caused this unnecessary and excessive damage to Plaintiff's Vehicle in their quest to find the money and any other unlawful substances in the Vehicle. Defendants Jehami and Beydoun repeatedly demanded from Plaintiff as a bribe in order to let him go free, and as such, the damage caused to Defendant's Vehicle was completely without justification and excessive.

47.     As a result of Defendants' unlawful actions, Plaintiff now suffers from *inter alia*, paranoia, anxiety, and general distrust of authority.

48.     The seeking of a bribe by the NYPD is sadly, not limited to the instant matter and Plaintiff, and even more disturbing, is not limited to the 'rank-and-file' members of the NYPD.

49.     In 2016, federal authorities arrested Deputy Chief Michael Harrington, Deputy Inspector James Grant, Lt. Paul Dean, and Sgt. David Villanueva. Deputy Chief Harrington and Deputy Inspector Grant, two of the *highest* uniformed positions in the entire NYPD, were charged with accepting bribes in form of jewelry, Brooklyn Nets tickets, hotel rooms in Italy, private jet

flights to Las Vegas and more, in exchange for providing favorable treatment to two Brooklyn men who provided the bribes, including retrieving valuable diamonds from a competitor business and 'returning' them to the two men who bribed them. Lt. Dean and Sgt. Villanueva were charged in connection for mandating bribes in return for the issuance of firearms licenses—licenses which are notoriously difficult to obtain within the City of New York.

50.     Back in 2018, this same Court dealt with similar allegations of bribery and corruption within the NYPD, in *Kishor Kumar Rao* v. *City of New York*, 2018 U.S. Dist. Lexis 54920 (E.D.N.Y. March 29, 2018). In *Kishor*, the plaintiff made strikingly similar allegations to that of Plaintiff in the instant matter. There, the plaintiff alleged that after he was arrested by officers of the NYPD, he was pressured to by the arresting officers to provide them with a bribe of $100,000.00 in order to allow the plaintiff to be set free and continue to operate any unlawful activities he was engaged in prior to arrest. When the plaintiff refused, the defendant officers used excessive force in arresting the plaintiff, and caused the filing of baseless charges against him.

51.     In 2019, Angela Meyers, Anthony Rose and other members of the NYPD were arrested by law enforcement officials and charged with running a massive bribery and kickback scheme within the NYPD. Specifically, Ms. Meyers, Mr. Rose and other members of the NYPD bribed hospital officials, and received bribes/kickbacks from lawyers, and medical clinics in return for providing private, personal information (including information protected by HIPAA) about recent victims of car accidents and other physical injuries, and steering said victims to the doctors and lawyers working on the scheme with the members of the NYPD.

52.     Additionally, in 2019, Officer Ishmael Bailey of the NYPD was arrested and charged with a number of crimes, including bribery, when he Officer Bailey offered to help transport drugs for various individuals in exchange for cash payments.

53.     Again, in 2019, Sgt. Steven Lee while working as an undercover officer in Queens who eventually uncovered a massive NYPD bribery scandal involving prostitution and drug rings. Sgt. Lee reported his findings to the highest levels of the NYPD, only to have the NYPD systematically mistreat, belittle, and was the subject of numerous retaliatory attacks by high-ranking officials of the NYPD. Sgt. Lee eventually filed suit in state court to force Defendant City to answer for its actions (Index No. 707014/2019-Queens Cty.).

54.     As recently as 2021, federal authorities arrested Officers Robert Smith, Heather Busch, and Robert Hassett, and charged them with accepting bribes from a tow truck company, and in return for money, the officers would ensure that the specific tow truck company would be regularly called to scenes of accidents to assist in transporting vehicles, all the while subverting the NYPD's regular system for assigning tow trucks to accident scenes.

55.     Specifically, this is also not the first time allegations of abuse of authority have been leveled against Defendant Beydoun. According to the Civilian Complaint Review Board, from 2012-2021, Defendant Beydoun was alleged to have abused his authority as police officer on four separate instances, in addition to numerous allegations of excessive force. As to Defendant Jahmi, CCRB has record of one allegation against him for abuse of authority. Accordingly, Defendant City had actual knowledge that its employees, Defendants Beydoun and Jahmi were prone to abuses of their authority as police officers in the NYPD. The hiring, retention, and lack of oversight/supervision by Defendant City of their employees, namely Defendants Beydoun and Jahmi, allowed Defendants Beydoun and Jahmi to abuse the criminal process by filing a false criminal court information, designed to bring baseless and enhanced charges against Plaintiff as a result of his failure to provide bribe money to Defendants Jahmi and Beydoun, as they so demanded from Plaintiff, described, *supra*.

56.     By making good on their threats, Defendants Jahmi and Beydoun also caused Plaintiff to be unable to use or otherwise access the Vehicle for nearly a year, from February 12, 2021 through on or about December 2021.

57.     While Plaintiff's Vehicle was in police custody due to the aforementioned constitutional violations of Defendants, Plaintiff was required to continue to pay his monthly payments on his vehicle in an amount of not less than $400.00 per month, and to his insurer an amount of over $300.00 for monthly insurance premiums he continued to pay to the Vehicle's insurer to maintain the Vehicle.

58.     Thus, as can be readily and sadly seen, bribery and corruption has run rampant within the NYPD, and has poisoned and infiltrated nearly all levels of the NYPD, including the highest-ranking officials, described *supra.* Defendant City has therefore had actual knowledge of the consistent and pervasive abuses of authority in the form of bribery and corruption by its officers and employees for years before Plaintiff's arrest on or about February 12, 2021.

59.     Eventually, after Plaintiff was forced to make numerous and repeated court appearances, on or about December 26, 2021 all of the charges against Plaintiff were dismissed and sealed.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 (False Arrest)

60.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

61.     In committing the acts and commissions complained of herein, Defendant Beydoun and Defendant Jahmi acted under color of state law, individually, to deprive Plaintiff of his constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures, which includes the right to be

free from a warrantless arrest absent probable cause.

62.     By their conduct, as described herein, and acting under color of state law to deprive the Plaintiff of his right to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, Defendants Beydoun and Defendant Jahmi are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

63.     Here, Defendant Jahmi proceeded to arrest Plaintiff despite a complete and total lack of evidence demonstrating probable cause to effectuate such an arrest. Specifically, Plaintiff was sitting lawfully in the Vehicle, waiting for a companion to come out of her apartment, when without reason or probable cause, Defendant Jahmi proceeded to arrest Plaintiff on or about February 12, 2021.

64.     Defendant Jahmi's did not witness Plaintiff engage in any unlawful activity and as such, said seizure and arrest of Plaintiff by Defendant Jahmi was also therefore unreasonable.

65.     As a direct and proximate result of Defendant Jahmi's unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, as described, *supra.*

66.     Moreover, the unlawful conduct of the aforementioned Defendant was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 (Denial of Fair Trial/Fabrication of Evidence)

67.     Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

68.     As described more fully above, Defendant Beydoun, while acting individually and jointly, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

69.     As a result of Plaintiff's refusal to provide bribe money to Defendant Beydoun and said defendant then provided false allegations to prosecutors, by stating that they observed Plaintiff in possession of unlawful substances, including but not limited to crack, heroin and methamphetamine, and as such, their statements were calculated to improperly influence prosecutors into effectuating a criminal prosecution, and would likely influence a jury.

70.     Despite not being present at the scene of Plaintiff's arrest on or about February 12, 2021 Defendant Beydoun provided his false statement likely to influence a jury and effectuate criminal prosecution against Plaintiff when, after Plaintiff refused to bribe Defendant Beydoun, Defendant Beydoun stated that Plaintiff was found in possession of crack, meth, and heroin. Defendant Beydoun made these statements despite his absence at the scene of Plaintiff's arrest, and thus had no first-hand knowledge of the results or findings arising our of Plaintiff's arrest.

71.     By fabricating the false reports and statements, Defendants Beydoun thereby mislead and misdirected the criminal prosecution of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

72.     In committing the acts and omissions complained of herein, Defendant Beydoun acted under color of state law to deprive Plaintiff of his constitutionally protected rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

73.     As a direct and proximate result of the Defendant's deprivation of Plaintiff's constitutional rights, Plaintiff suffered injuries and damages, as set forth, *surpa*.

74.     The unlawful conduct of Defendant Beydoun was willful, malicious, oppressive,

and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 (Failure to Intervene)

75.     Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiff's constitutional right to due process was violated by Defendant Beydoun when Defendant Beydoun brought Plaintiff into a separate room at the 68th Precinct, and demanded that Plaintiff provide bribe money to him in order for him to be set free, and if he didn't Defendant Beydoun would take steps to ensure that unfounded enhanced charges would be asserted against Plaintiff, that Defendant Beydoun would destroy Plaintiff's Vehicle, and take steps to frustrate the judicial process so that Plaintiff remained in custody beyond the period of time which is reasonable and necessary to effectuate and process an arrest.

77.     Defendants Jahmi, and John Doe Officers #2-#5 were all present in the room with Plaintiff and Defendant Beydoun when Defendant Beydoun demanded said bribe payment from Plaintiff. Accordingly, Defendant Jahmi and John Doe Officerss #2-5 had actual knowledge that Plaintiff's constitutional rights were being violated by Defendant Beydoun.

78.     Defendants Jahmi and John Doe Officers #2-#5 were in the immediate vicinity of Defendant Beydoun when Defendant Beydoun demanded bribe money from Plaintiff, and despite hearing Defendant Beydoun repeatedly demand bribe money from Plaintiff in exchange for favorable treatment, Defendants Jahmi and John Doe Officers #2-#5 did not take any steps or actions to intervene and prevent Defendant Beydoun from violating Plaintiff's constitutional rights. Defendants Jahmi and John Doe Officer's #2-#5 did absolutely nothing, and said absolutely nothing to prevent Defendant Beydoun from violating Plaintiff's constitutional rights, despite knowing that soliciting an arrestee in custody for bribe money was patently a violation of

Plaintiff's constitutional rights.

79.     Defendants Jahmi and John Doe Officers #2-#5 has a duty to intervene to prevent Defendant Beydoun's unconstitutional actions, described *supra*.

80.     Defendants Jahmi and John Doe Officers #2-#5 had a reasonable opportunity to intervene in Defendant Beydoun's unlawful conduct as they were all in the room with Defendant Beydoun and Plaintiff, and were clearly able to hear and see Defendant Beydoun violate Plaintiff's rights.

81.     Defendants Jahmi and John Doe Officers #2-#5 failed to intervene and protect Plaintiff, thus subjecting him to harm and injury, described *supra*.

82.     Accordingly, Defendants Jahmi and John Doe Officers #2-#5 are liable to Plaintiff for failing to intervene in an amount to be determined after trial, but not less than $100,000.00.

<u>FOURTH CAUSE OF ACTION</u>
**42 U.S.C. § 1983 (Malicious Abuse of Process)**

83.     Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

84.     In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Savino v. City of New York* 331 F.3d 63 (2 Cir. 2003).

85.     In the instant matter, Defendant Beydoun approached Plaintiff while Plaintiff was in custody at the NYPD's 68th Precinct.

86.     Defendant Beydoun brought Plaintiff into a separate area, where Defendant Beydoun stated, in sum and substance, "We know who you are, and you know why you're here.

Give us your money, and we will let you go, nothing more will happen."

87.     Plaintiff refused to provide bribe money to Defendant Beydoun, despite demands from Defendant Beydoun to do so.

88.     When Plaintiff refused to provide bribe money to Defendant Beydoun, the defendant stated in sum and substance, "Oh, you want to play hard? You want to be a tough guy? If you don't give me the money, I'll throw extra charges at you, destroy your car, and tie things up in court while you sit in jail."

89.     Making good on his threat, Defendant Beydoun made sworn statements with respect to Plaintiff's criminal court information, falsely alleging that Plaintiff was in possession of unlawful substances, specifically heroin, crack and meth, knowing that said information was false. Moreover, Defendant Beydoun ensured that Plaintiff's Vehicle would be damaged above and beyond what was reasonable and customary to effectuate a search of the Vehicle. To wit, Defendant Beydoun ensured that the Vehicle was thoroughly damaged and did cause such damage to the Vehicle, described *supra*, amounting to nearly $18,000.00 in damages.

90.     Defendant Beydoun improperly utilized the criminal court process and made flase sworn statement aimed at causing Plaintiff as much harm and injury as possible in retaliation for Plaintiff's refusal to provide him bribe money.

91.     Defendant Beydoun's actions in this regard was willful, malicious, and calculated to cause as much harm to Plaintiff as possible. Accordingly, Defendant Beydoun is liable to Plaintiff for malicious abuse of process in an amount to be determined after trial, but not less than $250.000.00, and as his actions were wanton and willful, punitive damages should be imposed.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 (Municipal Liability-*Monell*)

92.     Plaintiff realleges and reincorporates by reference each and every allegation set

forth in the foregoing paragraphs as if fully set forth herein.

93.     State and local governments are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution.

94.     Such liability exists where a state or municipal government fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights.

95.     At all times relevant, Defendant City had a duty to properly train, supervise, and discipline their employees and agents. Defendant City breached that duty, in part, by evincing a deliberate indifference as to the pervasive propensity of its employees and officers to solicit and demand bribe money from persons they arrest in the course of their employment with the NYPD.

96.     As described, *supra*, Defendant City is aware of a pervasive problem facing the NYPD: bribery and extortion.

97.     Between 2016 and 2021, there were at least 5 instances in which Defendant City became aware of repeated instances of the NYPD to engage in bribery and extortion tactics, seeking to secure bribes from persons the NYPD exudes authority over, including arrested individuals in their custody, and as such, were alerted to the fact that seeking to obtain monetary payments in return for favorable treatment is a violation of said persons constitutional rights.

98.     Defendant City has failed to take any steps to protect against the constitutional harm that was certain to occur without a corrective policy or series of actions in place.

99.     Defendant City failed to implement a policy to deter or correct the misconduct repeatedly complained of, and publicized by NBC, the New York Times, and the New York Post, among other major news outlets, in addition to the numerous complaints filed with CCRB, as well

as the various courts within the confines of the City of New York, thereby depriving individuals of their constitutional right to due process.

100.     This misconduct was encouraged, condoned, and ratified by Defendant City, as said misconduct has continued within the NYPD, as aptly demonstrated by the numerous incidents described, *supra*, as well as the instant matter which gives rise to Plaintiff's causes of action.

101.     The aforesaid unlawful policy, practice, and/or custom of Defendant City was a substantial factor in bringing about the violations of Plaintiff's rights under the Constitution and laws of the United States. Specifically, said unlawful actions by Defendant City led to Plaintiff having additional charges added to his criminal court information by Defendant Beydoun as a result of Plaintiff's failure to provide a bribe, and that Defendant Beydoun and others would harm Plaintiff's Vehicle to a degree beyond what is reasonable and necessary, a situation which Defendant City knew was occurring, and Defendant City was thereby condoning/deliberate indifferent to.

102.     By virtue of the foregoing, Defendant City is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and injuries, in an amount to be determined after trial, but not less than $200,000.00.

### SIXTH CAUSE OF ACTION
### 42 U.S.C. § 1983 (Malicious Prosecution)

103.     Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

104.     Defendants Beydoun and Jahmi initiated a criminal court action against Plaintiff by making false statements in Plaintiff's criminal court information, specifically that Plaintiff was found to be in possession of heroin, crack and methamphetamine, despite knowing he did not posses such items.

105.     Defendants Beydoun and Jahmi's basis and motivation for filing said criminal court information is due to Plaintiff's refusal to provide bribe money to Defendant Beydoun, described *supra*, constituting actual malice.

106.     Defendants Beydoun and Jahmi knew that there was no probable cause to charge Plaintiff with possession of such substances, as said substances were not even found on Plaintiff at any point during the many searches conducted during, and after his arrest on February 12, 2021.

107.     Plaintiff further had these baseless allegations and charges, as well as all charges against him, dismissed by the Kings County District Attorney's Office on or about December 21, 2021.

108.     Accordingly, Defendants Beydoun and Jahmi are liable to Plaintiff in an amount to be determined after trial, but not less than $50,000.00.

## SEVENTH CAUSE OF ACTION
### (Abuse of Process-NY Common Law)

109.     Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein

110.     In the instant matter, Defendant Beydoun approached Plaintiff while Plaintiff was in custody at the NYPD's 68th Precinct after Plaintiff as brought to a separate room within the Precinct to speak with Defendant Beydoun.

111.     Once Plaintiff was with Defendant Beydoun in the separate area of said precinct, Defendant Beydoun stated, in sum and substance, "We know who you are, and you know why you're here. Give us your money, and we will let you go, nothing more will happen."

112.     Plaintiff refused to provide bribe money to Defendant Beydoun, despite demands from Defendant Beydoun to do so.

113.    When Plaintiff refused to provide bribe money to Defendant Beydoun, the defendant stated in sum and substance, "Oh, you want to play hard? You want to be a tough guy? If you don't give me the money, I'll throw extra charges at you, destroy your car, and tie things up in court while you sit in jail."

114.    Making good on his threat, Defendant Beydoun made sworn statements with respect to Plaintiff's criminal court information, falsely alleging that Plaintiff was in possession of unlawful substances, specifically heroin, crack and meth, knowing that said information was false. Moreover, Defendant Beydoun ensured that Plaintiff's Vehicle would be damaged above and beyond what was reasonable and customary to effectuate a search of the Vehicle. To wit, Defendant Beydoun ensured that the Vehicle was thoroughly damaged and did cause such damage to the Vehicle, described *supra*, amounting to nearly $18,000.00 in damages.

115.    Defendant Beydoun improperly utilized the criminal court process and made flase sworn statement aimed at causing Plaintiff as much harm and injury as possible in retaliation for Plaintiff's refusal to provide him bribe money.

116.    Defendant Beydoun's actions in this regard was willful, malicious, and calculated to cause as much harm to Plaintiff as possible. Accordingly, Defendant Beydoun is liable to Plaintiff for malicious abuse of process in an amount to be determined after trial, but not less than $250.000.00, and as his actions were wanton and willful, punitive damages should be imposed.

117.

## EIGHTH CAUSE OF ACTION
### (Negligence-NY Common Law)

118.    Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein

119.    Defendant Beydoun and Defendant City were, and continue to be in, an employer-employee relationship. Specifically, Defendant City employs Defendant Beydoun as a Sargent in the New York Police Department.

120.    As a sworn police officer, Defendant Beydoun owed a duty to Plaintiff to carry out his duties in a constitutionally appropriate manner, and a duty not to unnecessarily damage Plaintiff's Vehicle more than necessary to effectuate a search, and to not to abuse the criminal court process for personal gain.

121.    Despite owing these duties to Plaintiff, Defendant Beydoun breached his duties to Plaintiff by damaging Plaintiff's Vehicle beyond what was reasonable and necessary, and did so in furtherance of punishing Plaintiff for refusing to provide a bribe to Defendant Beydoun. Accordingly, Defendant Beydoun's breach of his duties to Plaintiff were the direct and proximate causes of the damage to Plaintiff's Vehicle, and for Plaintiff having to defend against baseless charges which would not have been filed had Plaintiff complied with Defendant Beydoun's demand for a bribe.

122.    As a result of Defendant Beydoun and Defendant City breaching its aforementioned duties to Plaintiff, Plaintiff has suffered the deprivation of his rights and liberty, and was deprived of his Vehicle for nearly a full year, in addition to the Vehicle suffering nearing $18,000.00 in damages, described *supra*.

123.    Accordingly, Defendant Beydoun and Defendant City are liable for negligence in an amount to be determined after trial, but not less than $75,000.00.

## NINTH CAUSE OF ACTION
### (Negligent Hiring, Training, and Supervision-NY Common Law)

124.    Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein

125.    Defendant Beydoun and Defendant City were, and continue to be in, an employer-employee relationship. Specifically, Defendant City employs Defendant Beydoun as a Sargent in the New York Police Department.

126.    As stated, *supra*, Defendant Beydoun has had no less than 7 allegations of abuse of authority and other actions which are prohibitive conduct by a Sargent in the NYPD. Accordingly, Defendant City had actual knowledge of Defendant Beydoun's propensity to engage in acts which constitute abuse of authority as a police officer.

127.    Despite having actual knowledge of such propensity, Defendant City nonetheless allowed Defendant Beydoun to continue in his employment with Defendant City, including as a Sargent in the NYPD, whereby Defendant City knew, or had reason to believe that Defendant Beydoun would continue to be placed in situations, by virtue of his position as Sargent in the 68th Precinct, where he could abuse his authority over arrestees, as he abused with Plaintiff.

128.    Defendant Beydoun did in fact abuse his authority yet again, by having Plaintiff placed in a separate room of the 68th Precinct, whereby Defendant Beydoun proceeded to demand a bribe from Plaintiff, and if he didn't provide said bribe, then Defendant Beydoun would take unlawful steps to file false charges, attempt to keep Plaintiff in custody for longer than is reasonably necessary to effectuate and process an arrest, and to destroy the Vehicle, described *supra*.

129.    As a result of Defendant City's failure to ensure that Defendant Beydoun was no longer in a position to abuse his authority, Defendant Beydoun did in fact abuse his authority by demanding a bribe from Plaintiff in exchange for his release and favorable treatment. When Plaintiff refused to provide said bribe, Defendant Beydoun further abused his authority by swearing to additional allegations/charges on Plaintiff's criminal court information, which

contained information about the incident which lead to Plaintiff's arrest, purported to be known to Defendant Beydoun, despite his complete absence from the scene of Plaintiff's arrest which Defendant Beydoun knew to be untrue, Defendant directed the securing and eventual 'search' of the Vehicle in such a manner which was beyond that of what is reasonable and necessary to effectuate said search of the Vehicle, and in a manner which was calculated to do as much damage to the Vehicle, making good on Defendant Beydoun's threat, causing nearly $18,000.00 in damage to the Vehicle.

130.    Accordingly, Defendant City is liable for negligent supervision and retention of Defendant Beydoun, in an amount to be determined after trial, but not less than $150,000.00.

**TENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress-NY Common Law**

131.    Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

132.    Defendant Beydoun engaged in extreme and outrageous conduct, which is beyond the bounds of what a normal, civilized society tolerates, in that Defendant Beydoun violated Plaintiff's right to be free from abuse of process when he took Plaintiff into a room at the 68th Precinct and stated in sum and substance that Defendant Beydoun 'knew who Plaintiff was' and demanded a bribe from Plaintiff in order to be set free, and if Plaintiff did not, Defendant Beydoun promised to add additional, baseless charges, destroy the Vehicle, and ensure the criminal court process against Plaintiff was extended beyond what is customary and reasonable in an attempt to harass and restrict Plaintiff's rights and liberties.

133.    Such conduct was reasonably calculated to cause as much collateral damage to Plaintiff as possible, or at the least, said conduct evinces a disregard of substantial probability of causing severe emotional distress, and as a result of Defendant Beydoun's actions, Plaintiff has

suffered and continues to suffer from paranoia, anxiety, fear of authority, and other mental health issues.

134.    Accordingly, Defendant Beydoun is liable to Plaintiff for intentional infliction of emotional distress, in an amount to be determined after trial, but not less than $50,000.00.

## ELEVENTH CAUSE OF ACTION
### 42 U.S.C. 1983-Excessive Force

135.    Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein

136.    The Fourth Amendment to the US Constitution protects persons from being subjected to excessive force while being stopped, and eventually arrested by police officers. In other words, a law enforcement official may only use the amount of force necessary under the circumstance to effectuate a stop and/or arrest.

137.    In this matter, Defendant JOHN DOE OFFICER #1 used excessive force when he approached Plaintiff's Vehicle with his gun drawn, and pointed at Plaintiff, despite the fact that Plaintiff was simply sitting in his Vehicle, did not have any weapons, and did not act in any manner which would indicate Plaintiff was dangerous or possessed a weapon.

138.    Defendant JOHN DOE OFFICER #1's actions were objectively unreasonable as there was no cause for alarm or that Plaintiff posed any threat to any law enforcement official when Defendant JOHN DOE OFFICER #1 pointed his gun at Plaintiff.

139.    As a result of DEFENDANT JOHN DOE OFFICER #1 drawing and pointing his gun at Plaintiff, Plaintiff became fearful for his safety and wellbeing as Plaintiff was sitting in the Vehicle and did not threaten or making any threatening movements towards any of the defendants.

140.    Accordingly, Defendant JOHN DOE OFFICER #1 is liable to Plaintiff for

excessive force in an amount to be determined after trial, but not less than $25,000.00.

## TWELFTH CAUSE OF ACTION
### *Respondeat Superior-NY Common Law*

141.    Plaintiff realleges and reincorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

142.    Defendant City was and continues to be in an employer-employee relationship with Defendants Beydoun.

143.    In the instant matter, Defendant Beydoun made numerous threats to Plaintiff that if Plaintiff did not comply with Defendant Beydoun's demand for a bribe, Defendant Beydoun would then take steps reasonably calculated to harm Plaintiff, in that Defendant Beydoun made sworn statements which had the effect of placing additional, unfounded charges upon Plaintiff, ensured that the Vehicle would undergo a search designed to damage the vehicle and beyond that of what is reasonable and customary, as retaliation to Plaintiff for his failure to provide bribe money, described *supra*. Additionally, Defendant Beydoun effectuated the search of the Vehicle in a manner which is beyond what is reasonable and customary in an effort to find whatever unlawful substances he could find in order to charge Plaintiff with possession of said unlawful substances.

144.    Defendant Beydoun did the aforementioned acts in furtherance of his employment duties to Defendant City as Defendant Beydoun effectuated a search of the Vehicle beyond that of what is reasonable and customary, in an effort to find evidence which would corroborate Defendant Beydoun's sworn statement that Plaintiff was in possession, *inter alia*, of heroin and methamphetamine, in addition to finding other unlawful substances within the Vehicle.

145.    Defendant Beydoun's conduct in effectuating the search of the Vehicle was done within the scope of his employment as member of the NYPD, and said conduct was reasonably foreseeable that Defendant Beydoun would direct and effectuate the search of the Vehicle as it is

within the normal course of business to search an arrestee's moto vehicle.

146.    Defendant Beydoun then directed and effectuated the search of the Vehicle in a manner which was negligent and which a reasonable officer in the same or similar circumstances would know to cause extensive damage to the Vehicle; damage which was unnecessary in searching the Vehicle.

147.    Accordingly, Defendant City is liable to Plaintiff under the doctrine of *respondeat superior* in an amount to be determined after trial, but not less than $40,000.00.

<u>**DEMAND FOR RELIEF**</u>

**WHEREFORE**, Plaintiff Demands the following relief against the Defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial; and

(b)    punitive damages to the extent allowable by law; and

(c)    attorneys' fees; and

(d)    the costs and disbursements of this action; and

(e)    interest; and

(f)    for such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        April 18, 2022

**SPODEK LAW GROUP,  P.C**.

By: _____

Jeremy G. Feigenbaum, Esq.
*Attorneys for Plaintiff*
85 Broad Street, 17th Floor
New York, New York 10004
(347) 292-8630